Darryl L. Jones, Esq.
905 Photo Avenue
Anchorage, Alaska 99503
Tel (907) 278-1212
Fax (907) 278-1213

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Miranda Ditullio, | ) |
| Plaintiff, | ) |
| vs. | ) |
| Josef F. Boehm, | ) |
| Defendant. | ) Case No. 3:09-CV-00113-JWS |

**PLAINTIFF'S REPLY TO JOSEF F. BOEHM'S
OPPOSITION TO PARTIAL SUMARY JUDGMENT**

Partial summary judgment must be entered against Josef Boehm because his general denials are not sufficient to establish genuine issues of material fact; he is liable for punitive damages; he admitted that he engaged in conduct subject to liability under 18 U.S.C. § 1595 after the effective date of that statute, and 18 U.S.C. § 1595 was a remedial statute that applied to conduct prior to the date of enactment.

**I.  OBJECTION TO BOEHM'S OFFER TO FILE SUPPLEMENTAL BRIEFING OR MATERIALS.**

After suggesting that he has raised a novel issue in this opposition to summary judgment, Boehm threatens to or otherwise offers to submit additional material should plaintiff decide to respond to his arguments.

1

(Docket 32, p. 15). This is a consistent strategy employed by Boehm and plaintiff strongly objects. These cases arise because Boehm was very good at finding penniless juveniles who may have already had family problems and then he would wear away their defenses by providing illegal drugs. He should not be allowed to employ those tactics here by gradually wearing away the ability to prosecute this case by waging a war of attrition. He was not allowed to employ this strategy in Purser v. Boehm, and he should not be allowed to pursue that strategy here. See Purser v. Boehm, U.S. District Court, Alaska 3:05-cv-00085-JKS (Docket 151, 152, 154, 155, 175); see also Id. (Order Granting Motion to Strike, Docket 199).

## II. Boehm has admitted to conduct after the effective date of 18 U.S.C. § 1595 so retroactivity is not at issue.

In opposing summary judgment, Boehm contends that he is liable under 18 U.S.C. § 1595 only if plaintiff can show that his conduct extended past the effective date of that civil remedy. (Docket 32, p. 8). He then submits that the effective date of 18 U.S.C. § 1595 was December 19, 2003. Relying on Landgraf v. USI File Products, 511 U.S. 244 (1995), Boehm asserts that because there is no evidence that Boehm violated 18 U.S.C. § 1591, after § 1595's effective date, plaintiff is not entitled to summary judgment. Arguably, such a finding would be consistent with the Supreme Court's reasoning in Landgraf, where the Court specifically held that:

LAW OFFICE OF
DARRYL L.
JONES

985 Plaza Avenue
Anchorage, Alaska 99503
Tel: (907) 276-1212
Fax: (907) 276-1213

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, see Republic Nat. Bank of Miami v. United States, 506 U.S. 80, 100, 121 L. Ed. 2d 474, 113 S. Ct. 554 (1992) (THOMAS, J., concurring in part and concurring in judgment), or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events **completed before its enactment**. (Citation in original, footnote omitted, emphasis added).

Landgraf, 511 U.S. at 269. Under Landgraf and consistent with Boehm's argument, if there is evidence that Boehm's conduct was not **completed** before December 19, 2003, then application of 18 U.S.C. § 1595 would not result in retroactive application of § 1595.

In entering his plea agreement with the Government, Boehm admitted to engaging in conduct covered by § 1595 after December 19, 2003. In the plea agreement at pages 24-25, Boehm admitted that:

> Beginning in late 2001 and continuing until **December 22, 2003**, BOEHM conspired with BOLLING, WILLIAMS, AND TYREE, to recruit persons under 18 ("juveniles") to engage in sexual acts. The juveniles were recruited by offering them cocaine, which was manufactured outside Alaska and effected interstate commerce. (Emphasis added).

Because Boehm has admitted to engaging in continuing conduct from 2001 to December 22, 2003 and because his conduct continued past the effective date of § 1595, he is, by his own admission, subject to suit under that provision. This conclusion is supported by a more recent Supreme Court decision on retroactivity.

The decision in Fernandez-Vargas v. Gonzalez, 548 U.S. 30 (2006), dealt with a particularly harsh provision of the Illegal Immigration

3

LAW OFFICE OF DARRYL L. JONES
905 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 278-1214
Fax: (907) 278-1213

Reform and Immigrant Responsibility Act ("IIRIRA"). Petitioner, Fernandez-Vargas, had come to the United States in the 1970s, and been deported several times. Id. at 35-36. After his last illegal reentry in 1982, he married, had a child and starting a trucking business, and lived a productive life for the next twenty years in Utah. Id. Only when he applied to adjust status in 2003, based on a relative visa petition filed by his wife, did immigration authorities begin proceedings. They reinstated his 1981 deportation order, based upon a reinstatement provision created by IIRIRA, leaving Fernandez-Vargas ineligible for any relief. Id. The question was whether the IIRIRA Reinstatement provision should apply to those who reentered prior to the April 1, 1997 date when IIRIRA's reinstatement provision first became effective. As usual, Congressional intentions were not made clear in the written law. Id., at 36-39. Distinguishing Fernandez-Vargas from Langraf, the majority concluded that application of the new provision to petitioner did not implicate retroactivity because his conduct continued past the effective date of the new provisions. Id., 548 U.S. at 44-45.

Boehm's case is also distinguishable from Langraf and other cases because Boehm's conduct continued past the effective date of 18 U.S.C. § 1595. See Abraham v. Singh, Civ. No. 04-0044, slip op. at 13-17 (E.D. La. July 5, 2005) reversed on other grounds Abraham v. Singh, 480 F.3d 351, 354 (5th Cir. La. 2007) (the district court denied retroactive application of § 1595 but there was no allegation that conduct continued

LAW OFFICE OF
DARRYL L.
JONES
906 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 278-1212
Fax: (907) 278-1213

4

past effective date and plaintiffs never opposed or appealed the motion to dismiss; the Fifth Circuit reversed allowing the claims to proceed under RICO); see also Doe I v. Reddy, No. 02 Civ. 05570, 2003 U.S. Dist. LEXIS 26120, at *13 n.2, *33 & n.4, *35-36 (N.D. Cal. Aug. 4, 2003); Topo v. Dhir, No. 01 Civ. 10881, 2003 U.S. Dist. LEXIS 21937, at *13 (S.D.N.Y. Dec. 3, 2003) (two actions arising out of trafficking claims pre-dating the TVPRA where the courts allowed the plaintiffs to merge the TVPA's expanded definition of coercion into their claims under the Alien Tort Claims Act) and see, Adhikari v. Daoud & Partners, No. 09-Civ-1237; Slip. Op. (S. Dist. Texas 2009) (applying amendments to the TVPRA retroactively because no vested rights would be abrogated by retroactive application).

### III. Even if Boehm had not admitted to post December 19, 2003 conduct, § 1595 would be applied retroactively.

The only court holding that § 1595 would not be retroactively applied did so based on a motion to dismiss that was not opposed, and not appealed. Abraham v. Singh, Civ. No. 04-0044, slip op. at 13-17 (E.D. La. July 5, 2005). In Adhikari v. Daoud & Partners, No. 09-Civ-1237; Slip. Op. (S. Dist. Texas 2009) the court did allow new provisions of the TVPRA to be applied retroactively because the evils sought to be avoided by Landgraf were absent. Those evils are also absent in this case.

To be clear, Landgraf does not preclude retroactive application of all statutes creating civil remedies where Congress has failed to express a

5

specific intent regarding the statutes application. Instead, Landgraf merely applies a "presumption" of non-retroactivity and the presumption can be overcome by showing that retroactive application to pending case would not violate rights already vested. Republic of Aus. v. Altmann, 541 U.S. 677, 693 (2004) (citing Landgraf, 511 U.S. at 266). The presumption applies to protect rights already vested when the statute was enacted, and to prohibit imposition of new liabilities for transactions already completed. Id. The central purpose of the Landgraf antiretroactivity presumption was to avoid "ad hoc" changes to legal rules upon which a particular party relied in shaping his primary conduct. Republic of Aus. v. Altmann, 541 U.S. at 696. In Landgraf the employer had a right to avoid liability for damages if the employer did an investigation, acted in good faith, and took appropriate remedial action. Landgraf, 511 U.S. at 283 fn. 35. That right was vested prior to amendments, and the amendments would have abrogated that right. Id.

In the instant case, Boehm was on notice that his conduct would subject him to civil liability when he entered his plea, so he is not deprived of any rights accruing under his plea agreement. He entered his plea after the effective date of § 1595. Not only was Boehm on notice, he clearly had no right to sex traffic in children, and he had no right to provide children with illegal drugs with the intent to get them addicted so he could trade drugs for sex. Boehm likewise had no right to avoid civil liability for his criminal conduct. He could have been sued in state court

6

LAW OFFICE OF
DARRYL L.
JONES

905 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 279-1312
Fax: (907) 279-1313

or he could have been sued in federal court for a violation of civil rights, including a claim for violation of the Thirteenth Amendment. He could also have been sued under RICO. See *Kathleen Kim, Daniel Werner, Civil Litigation on Behalf of Victims of Human Trafficking, Legal Foundation of Los Angeles (March 2005)* (explaining the causes of action available to victims, including Civil Rights Claims, Fair Labor Standards Act Claims, RICO Claims, and claims based on Involuntary Servitude, all of which may be pursued in the Federal Court). Thus, § 1595 did not create any liabilities that did not exist before the enactment of the statute. In fact, merely changed the tribunal to hear the claim, or changed the manner in which the tribunal should hear the claim by consolidating all of the other claims that could have been asserted into one cause of action. See Landgraf, 511 U.S. at 274 (retroactive application of statutory change that does not take away vested rights and which merely change the tribunal or the manner in which a tribunal hears the claim is not barred). This is evidenced by the fact that when adopting § 1595, Congress renamed the Act to make clear that it was intended to protect against involuntary servitude. See *Act Dec. 19, 2003, P.L. 108-193, §§ 4(a)(4)(B), 5(c)(1), 117 Stat. 2878, 2880* (substituted the chapter heading for one which read: "CHAPTER 77. PEONAGE AND SLAVERY").

The Landgraf Court begins its analysis with the general proposition that "fairness dictate[s] that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled

AW OFFICE OF
DARRYL L.
JONES

106 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 276-1012
Fax: (907) 276-1213

7

expectations should not be lightly disrupted." 511 U.S. at 265. With respect to damages, the Court focused on how damages "affect the liabilities of defendants" and its "impact on private parties planning." Id., at 282. The Court found important to its analysis whether "a statute substantially increas[ed] the monetary liability of a private party to apply to conduct occurring before the statute's enactment." Id., at 284. In the end, Landgraf turned on the fact that while the statute did not make conduct unlawful that was once lawful, it did authorize the recovery of compensatory damages where no such damages and corresponding liability previously existed. Id., 281-82.

The Supreme Court has consistently instructed that a determination of the retroactive application of a statute is never a rote exercise. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." 511 U.S. at 269 (citation omitted).

> Rather, the Court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. . . . [R]etrocativity is a matter on which judges tend to have "sound ... instinct[s],' ...and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

Landgraf, 511 U.S. at 270 (citations omitted). In applying the Landgraf test to this case, the Court should weigh heavily the considerations of fair notice, reasonable reliance and settled expectations because if there

8

LAW OFFICE OF
DARRYL L.
JONES
905 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 278-1212
Fax: (907) 278-1213

is no violation of any of these provisions, retroactive application does not implicate the rights the <u>Landgraf</u> presumption seeks to protect.

Here, Boehm had no vested right to sex traffic in children. He had no vested right to avoid civil liability for his criminal conduct. No new liabilities are imposed because § 1595 merely consolidates all of the other causes of action a victim of sex trafficking may have otherwise pursued. Boehm cannot show reasonable reliance because he was on notice at the time he entered his plea that he would be subjected to civil liability, and he stipulated to conduct after the effective date of § 1595. Clearly, the presumption against retroactive application does not apply in this case. Sex trafficking in children is a continuing offense and because Boehm stipulated to both pre and post § 1595 conduct, he can be held liable for civil damages caused by his criminal conduct.

**IV. There are no questions of fact in dispute regarding liability and plaintiff is entitled to summary judgment.**

Summary judgment motion must be decided upon evidence that would be admissible or usable at trial. Rule 56 indicates that a trial judge should decide a summary judgment motion based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(e). It is settled law that the judge may consider only these specific materials or other evidence that would be admissible at trial. Inadmissible evidence is not to be considered unless, like an affidavit, it is "otherwise provided for" in Rule 56. See Fed. R. Civ. P. 56(e); see also 10A C. Wright, A. Miller & M.

9

AW OFFICE OF
DARRYL L.
JONES

905 Pirate Avenue
Anchorage, Alaska 99503
Tel: (907) 278-1212
Fax: (907) 278-1213

*Kane, Federal Practice and Procedure* § 2721 (1983) ("The particular forms of evidence mentioned in the rule are not the exclusive means of presenting evidence on a Rule 56 motion. The court may consider any material that would be admissible or usable at trial."); *6 J. Moore, Moore's Federal Practice para. 56.11 [1.-8] (2d ed. 1972)* ("In addition to pleadings, depositions, admissions on file, answers of a party to interrogatories, and affidavits, which Rule 56(c) specifically enumerates, a court may consider any additional materials that would be admissible in evidence or otherwise usable at trial. Material that does not come within the above broad category should not be considered."). The strength of this principle is shown by the manner in which a trial judge is supposed to treat affidavit testimony: if some of the testimony contained in the affidavit would be inadmissible if it were offered at trial (e.g., as hearsay), the judge is to consider only the portions that would be admissible at trial and excise the remainder. See *6A J. Moore, supra, para. 56.22[1], at 56-1330 to 56-1331; 10A C. Wright, A. Miller & M. Kane, supra, § 2738, at 511*. Boehm seeks to defeat summary judgment by proffering inadmissible, irrelevant evidence and he failed miserably in his attempt.

Boehm seeks to introduce a recorded interview of the plaintiff by one of his investigators in 2004 and notes allegedly written by plaintiff. These are unsworn statements. An unsworn statement is not to be construed as "competent evidence," and should not be relied upon when reviewing summary judgment. <u>Woloszyn v. County of Lawrence</u>, 396

10

F.3d 314, 323 (3d Cir. 2005) (holding an unsworn statement is not competent evidence); Adickes v. S. H. Kress & Co., 398 U.S. 144, 158 n.17 (1970) (noting that an unsworn statement does not satisfy the requirements of Fed.R.Civ.P. 56(e)). Because it is an unsworn statement, it is inadmissible for purposes of summary judgment and cannot form the basis for a finding of genuine issues of fact. Adickes supra.

Notably, Boehm does not file any declarations and he does not file any affidavit or other admissible evidence to dispute the fact that plaintiff is the person identified as "M.D." in the plea agreement. The general denials of his counsel in memoranda are not evidence and do not raise a genuine issue of material fact. The strongest evidence that Boehm has that could affect this Court's decision on summary judgment is his Exhibit C, which is an order from the case of Purser v. Boehm, U.S. District Court, Alaska, Case No. 3:05-cv-85 JKS. As Boehm rightly asserts, that case dealt with identical claims, and an identical defendant, and Judge Singleton did in fact deny summary judgment. As Boehm might be suggesting, this Order would have collateral estoppel effect in this case. See Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 773 (9th Cir. Cal. 2003) (applying offensive non-mutual collateral estoppel to a summary judgment order in a prior case). **However**, Boehm relies on the wrong summary judgment order from the Purser case.

LAW OFFICE OF
DARRYL L.
JONES

935 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 278-1212
Fax: (907) 278-1211

11

In the Order upon which Boehm relies, the Court denied summary judgment, primarily, because Purser had not filed an affidavit stating she was the part identified by initials in Boehm's plea agreement and establishing the connection between herself and Boehm. Boehm's Exhibit C, pp. 3-5. The Court noted that Purser could renew her motion to cure the deficiency. Id. Purser did so and the Order at Docket 200 (Under Seal), in Purser v. Boehm granted summary judgment on liability under 18 U.S.C. § 1595. This Order also granted summary judgment on liability for punitive damages. Id. After entry of that Order entering summary judgment as to Boehm's liability, the Purser Court entered its Order at Docket 228, explaining the decision and it entered its jury instructions at Docket 228-2 wherein it provided instructions that Boehm was liable for compensatory and punitive damages and the jury was free to determine the amount of those damages. See Purser v. Boehm, U.S. District Court, Alaska, Case No. 3:05-cv-85 JKS at Docket 200, 228, 228-2. After entry of the Order on summary judgment, the Purser case settled in Purser's favor, and the final order on summary judgment fully determined Boehm's liability for the conduct admitted to in his plea agreement. To the extent Boehm now wants collateral estoppel to be applied to the Orders in the Purser case, it must be the final Order on liability found at Docket 200, that would apply in the instant case.

LAW OFFICE OF
DARRYL L.
JONES

905 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 278-1512
Fax: (907) 278-1519

In his plea agreement, Boehm stipulated to certain facts in order to establish the evidentiary basis for his plea:

> Beginning at some exact date unknown but at least between in or about late 2001, and continuing until at least December 22, 2003, both dates being approximate and inclusive, the defendant Josef F. Boehm and others, including Allen K. Bolling, a/k/a "Foul Al", Leslie J. Williams, Jr., and Bambi Tyree, agreed to distribute cocaine and cocaine base to persons under 21 years of age. During the period of the conspiracy, Josef F. Boehm, Bolling, Williams, Tyree and other members of the conspiracy distributed cocaine and cocaine base to persons between the ages of 13 and 21, as well as others over the age of 21.
>
> Boehm bought cocaine and cocaine base from Williams, Bolling, and others. Tyree introduced Boehm to Williams and Bolling for purpose [sic] of them selling cocaine base to Boehm. Boehm personally distributed between 50 and 150 grams of the cocaine base that he purchased from Williams, Bolling, and others to persons Boehm knew were between the ages of 13 and 21, as well as others over the age of 21.
>
> Beginning in late 2001 and continuing until December 22, 2003, Boehm conspired with Bolling, Williams, and Tyree to recruit persons under 18 ("juveniles") to engage in sexual acts. The juveniles were recruited by offering them cocaine, which was manufactured outside Alaska and effected interstate commerce. The following juveniles were knowingly recruited by the defendants to engage in sex: M.D., . . . . These juveniles had sex with one or more of the defendants, and received money and/or controlled substances from the defendants. The defendants knew the juveniles ages when they recruited the juveniles. To effect the purposes of the conspiracy, the defendant [presumably Boehm] purchased cocaine and distributed cocaine to one or more juveniles, including S.P., in or about the fall of 2001.

See Plaintiff's Exhibit 1; See also, Purser v. Boehm, U.S. District Court, Alaska, Case No. 3:05-cv-85 JKS at Docket 228. When offensive collateral estoppel is applied, it prevents Boehm from contesting any fact necessary to his conviction. See Allen v. McCurry, 449 U.S. 90 (1980);

13

LAW OFFICE OF DARRYL L. JONES
905 Photo Avenue
Anchorage, Alaska 99503
Tel- (907) 278-1212
Fax (907) 278-1213

and, <u>Parklane Hosiery Co., Inc. v. Shore</u>, 439 U.S. 322 (1979). These facts, combined with the Plaintiff's uncontested affidavit that she is the individual identified in the plea agreement as "M.D." are sufficient to establish the absence of genuine issues of material fact as to Boehm's liability for both compensatory and punitive damages, the amount of which will be determined by the jury. Accordingly, summary judgment on liability should be entered in favor of the plaintiff and against the defendant.

DATED this 22nd day of March 2010.

/s
Darryl L. Jones, Esq.
Attorney for Plaintiff
ABA No: 8811188

LAW OFFICE OF
DARRYL L.
JONES

905 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 278-1214
Fax: (907) 278-1213

Darryl L. Jones, Esq.
905 Photo Avenue
Anchorage, AK 99503
Tel (907) 278-1212
Fax (907) 278-1213
Email: lodj.federalnotices@yahoo.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| MIRANDA DITULLIO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| JOSEF F. BOEHM, | ) ) ) ) |
| Defendant. | ) ) Case No. 3:09-CV-00113-JWS |

**CERTIFICATE OF SERVICE**

I hereby certify that the plaintiff's PLAINTIFF'S REPLY TO JOSEF F. BOEHM'S OPPOSITION TO PARTIAL SUMARY JUDGMENT has been served on Sherman Ernouf (counsel for defendant) via electronic service on this 22nd day of March 2010.

Dated this 22nd day of March 2010.

..//s/..........
Darryl L. Jones, Esq.
Attorney for Plaintiff
ABA No: 8811188

LAW OFFICE OF
DARRYL L.
JONES

905 Photo Avenue
Anchorage, Alaska 99503
Tel: (907) 278-1212
Fax: (907) 278-1213

15

Case 3:09-cv-00113-JWS   Document 38   Filed 03/22/10   Page 15 of 15