UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| MIRANDA DITULLIO, | ) | |
| | ) | |
| Plaintiff, | ) | 3:09-cv-00113 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| JOSEF F. BOEHM, | ) | [Re: Motion at Docket 131] |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. MOTION PRESENTED

At docket 131, defendant Josef F. Boehm ("Boehm") moves for partial summary judgment asking the court to grant him a judgment as a matter of law on claims made pursuant to 18 U.S.C. §1595 by plaintiff Miranda Ditullio ("Ditullio"). Section 1595 provides a civil remedy for violations of 18 U.S.C. § 1591, which prohibits sex trafficking of children. Ditullio responds at docket 144, and Boehm replies at docket 145. Oral argument was not requested, and it would not assist the court.

## II. BACKGROUND

Pursuant to a plea agreement, Boehm pled guilty to conspiring to recruit minor females to engage in commercial sex acts in violation of 18 U.S.C. §§ 371 and 1591 and conspiring to distribute cocaine base to minors in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and 859(a). Boehm admitted that the facts set out in the plea

agreement were true. Among other things, he admitted that he knowingly recruited M.D.–now known to be Ditullio–to engage in sex."[1]

Ditullio's complaint sets out various state law claims, and a claim to recover damages pursuant to 18 U.S.C. § 1595 based on Boehm's violation of § 1591. This court previously denied Ditullio's motion for partial summary judgment and ruled that 18 U.S.C. § 1591 did not apply to conduct occurring before its December 19, 2003 effective date,[2] but granted Ditullio's motion for an interlocutory appeal.[3] On appeal, the Ninth Circuit affirmed this court's conclusion with respect to the retroactivity of § 1595.[4] Boehm now moves for summary judgment on the grounds that he took no action involving Ditullio on or after December 19, 2003.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[5] The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[7] Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8] All evidence presented by the non-movant must be believed for purposes of summary

---

[1] *Ditullio v. Boehm*, 662 F.3d 1091, 1095 (9th Cir. 2011).

[2] Doc. 61.

[3] Doc. 100.

[4] *Ditullio*, 662 F.3d at 1102. In addition, the appellate panel reversed this court's ruling that punitive damages were not authorized by § 1595.

[5] Fed. R. Civ. P. 56(a).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Id.* at 323-325.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-9 (1986).

-2-

judgment and all justifiable inferences must be drawn in favor of the non-movant.[9] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

## IV. DISCUSSION

Relying on Ditullio's own deposition testimony, as well as a statement she gave to an Anchorage Police Department detective, Boehm argues that Ditullio was not victimized by Boehm on or after December 19, 2003. In response, Ditullio provides an affidavit[11] which includes the following:

> 8. My deposition was taken in this case on or about June 4, 2010. During that deposition, I was asked when I had last seen Mr. Boehm and I testified that I believed it was sometime in early 2004. I was then told by Mr. Boehm's counsel that my memory must be faulty and that could not be true because Mr. Boehm was arrested on December 22, 2003, and had been incarcerated continuously since that date.
>
> 9. My memory was obviously wrong because I did not go to the jail to visit Mr. Boehm and if he was arrested on December 22, 2003, I could not possibly have seen him after that date. However, my attorney recently received hundreds of pages of documents containing police reports and other documents I had not previously reviewed. At the request of my attorney, I went to his office and reviewed those documents.
>
> 10. I reviewed those documents with my attorney and his staff who found documents that reminded me that Mr. Boehm had been arrested on State drug charges on or about December 13, 2003. Boehm was released on bail on or about 16 or 17 December 2003. On December 18, 2003, I was staying with my friend Barry Sapp at a hotel in Anchorage and Mr. Boehm was at another hotel. I went to the hotel where Boehm was staying and I stayed there with him through to and including December 19, 2003.[12] During that time, Boehm provided me with drugs in exchange for sex. I was pregnant at the time and Mr. Boehm always required some sexual act

---

[9]*Id.* at 255.

[10]*Id.* at 248-9.

[11]Doc. 144.

[12]*Id.* at 2-3.

on my part before he would provide drugs. He required sex, not only with
him, but with others so he could watch. After reviewing the documents, I
believe the last date that I was provided drugs and forced to have sex with
Mr. Boehm was December 19 and 20, 2003.

In response, Boehm contends that the affidavit is demonstrably a sham, because Ditullio was questioned at length about her whereabouts on December 19 and 20, and her deposition testimony demonstrates that she was not at Boehm's hotel room on those dates. Boehm urges the court to disregard the affidavit and decide the motion based on Ditullio's deposition testimony. The Ninth Circuit stated in *Van Asdale v. Int'l Game Technology*[13] that the "sham affidavit rule" is a necessary adjunct to the summary judgment procedure, and a party may not escape the consequences of his own deposition testimony simply by filing a contradictory affidavit.[14] However, the Ninth Circuit has also pointed out that there are limitations on a district court's authority to invoke the sham affidavit rule. First, the district court must make a finding that the affidavit actually is a sham, and second, the inconsistency must be "clear and unambiguous."[15] As explained in *Messick v. Horizon Industries,*[16] "the non-moving party is not precluded from elaborating, explaining or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit."

Ditullio's deposition testimony is far from clear and concise. It discloses that her memory of events which took place at or near the critical time were not very good at the time she was deposed. For example, she was not sure when she first met Boehm.[17]

---

[13] 577 F.3d 989 (9th Cir. 2009).

[14] *Id.* at 998.

[15] *Id.* at 998-999.

[16] 62 F.3d 1227, 1231 (9th Cir. 1995).

[17] Deposition of Miranda Ditullio, ("Ditullio Deposition") at pp. 51-54. The transcript of Ditullio's deposition was filed in a series of attachments to docket 131, each with its own docket number. For simplicity, the court will cite to the page number in the deposition transcript. The

-4-

Case 3:09-cv-00113-JWS   Document 146   Filed 07/24/12   Page 4 of 6

Ditullio was so addicted to crack cocaine during the relevant time period that she used it during her pregnancy, and the State of Alaska took the baby born to Ditullio on February 2, 2004, from her based on neglect.[18] In any event, Ditullio did testify that she was staying at the Royal Suites with Barry Sapp on December 20, 2003.[19] While her testimony indicates that she and Sapp stayed there for a couple of days, it is not clear if the other days were before, after, or both before and after December 20, 2003.[20] Ditullio's deposition testimony was to the effect that she last was at Boehm's house "at the end of '02, beginning of '03."[21]

In summary while the Ditullio deposition may be read to establish that she was not at Boehm's house at the time of the December 20, 2003 incident, there is no explicit statement that she did not see Boehm on December 19, 2003, or even at an hour on December 20, 2003, after the events which transpired at the Royal Suites. It may be added that the police reports on which Boehm relies do not include any evidence which could establish that Ditullio was not at Boehm's house at some time on December 19 or 20, 2003.[22] Given the standard of review, this court cannot make the required finding that the affidavit is a sham. Moreover, this court finds that to the extent the affidavit is inconsistent with the deposition, it may be read as explaining or clarifying the deposition based on information Ditullio gleaned from documents read subsequent to the deposition which refreshed an obviously foggy memory.[23]

---

reader may find them by reviewing dockets 131-6 thru 131-11.

[18]*Id.* at 58-62.

[19]*Id.* at 72.

[20]*Id.* at 71-78.

[21]*Id.* at 169.

[22]*See* docs. 131-4 and 131-5. At most, they confirm that at a particular time on December 20, 2003, Ditullio was at the Royal Suites Inn where she spent time with Sapp.

[23]The assertion on page 2 of Boehm's reply memo at docket 145 that the documents Ditullio avers she read "do not exist" is not supported by affidavit or other evidence and is disregarded for purposes of the pending motion.

## V. CONCLUSION

For the reasons above, this court declines to declare Ditullio's affidavit to be a sham. It follows that the motion at docket 131 is **DENIED**. While Ditullio's obvious interest in establishing contact with Boehm on December 19 or 20, 2003, and the inferences which may reasonably be drawn from her presence at the Royal Suites Inn, may lead a jury to conclude that there was no such contact, the jury will have to determine for itself whether Ditullio was exploited by Boehm on or after December 19, 2003.

DATED this 24th day of July 2012.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE